# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-2522

———————

Alison Weidner,                    *
                                   *
    Plaintiff - Appellant,          *
                                   *    Appeal from the United States
v.                                 *    District Court for the
                                   *    District of Minnesota.
Federal Express Corporation,       *
                                   *
    Defendant - Appellee.           *

———————

Submitted: January 11, 2007
Filed:   July 3, 2007

———————

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

———————

LOKEN, Chief Judge.

In this ERISA action under 29 U.S.C. § 1132(a)(1)(B), Alison Weidner alleges that Federal Express Corporation wrongfully denied her claim for total disability benefits under the Federal Express Long Term Disability Plan. The district court[1] reviewed the decision of the Federal Express Benefit Review Committee under the deferential abuse of discretion standard and concluded that substantial evidence in the administrative record as a whole supports the decision. Accordingly, the court granted summary judgment in favor of Federal Express. Weidner appeals. We affirm.

---

[1]The HONORABLE ANN D. MONTGOMERY, United States district judge for the District of Minnesota

# I.

Weidner worked as a Federal Express Manager/Ramp Operations for more than fifteen years. Although the duties of this job are not explained in detail, it is described in the administrative record as heavy work. In the fall of 2000, Weidner underwent carpal tunnel surgery and began receiving temporary disability benefits. Before returning to work, she contracted diverticulitis which triggered a severe flare-up of her multiple sclerosis. After exhausting six months of short term disability benefits, Weidner applied for benefits under the Long Term Disability Plan (the "Plan"), claiming that her multiple sclerosis was now permanently disabling.

Consistent with the Plan, Federal Express as Plan Administrator had retained Broadspire Services, Inc., to serve as Claims Paying Administrator. Broadspire's administrative services include gathering medical and other information relating to benefit claims, arranging for peer review of claimant medical records by independent physicians, and conducting initial claim reviews. If Broadspire initially denies a claim, the Plan provides that the claimant may appeal to the Benefit Review Committee, which is expressly authorized "to interpret the Plan's provisions" and to render final benefits determinations.

In support of her claim, Weidner submitted a report by her treating neurologist, Dr. Charles Ormiston, opining that she was unable to work, even with restrictions, because her multiple sclerosis caused dizziness, vision problems, numbness in her legs, fatigue, and tremors in her hands and legs. An MRI scan supported the multiple sclerosis diagnosis. Broadspire requested a peer review. The consultant agreed that Weidner was disabled from her job as Manager/Ramp Operations. In April 2001, Federal Express granted Weidner's initial claim for long term disability benefits.

The Plan provides that a participant unable to perform her own occupation because of a physical impairment or a mental impairment may receive long term

disability benefits for up to two years. To receive benefits for a longer period, however, the participant must demonstrate Total Disability, that is -

> the complete inability . . . because of a medically-determinable physical impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week for which [she] is reasonably qualified (or could reasonably become qualified) on the basis of [her] ability, education, training or experience.

The Plan further provides that a Total Disability must be -

> substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms.

In October 2002, Broadspire sent Weidner a reminder of this Total Disability provision, warning that her long term benefits would be discontinued in April 2003 unless she substantiated her Total Disability with the required "significant objective findings." The letter advised Weidner to schedule a visit with her doctor and submit a physician's report together with "any objective, supporting chart notes and patients' diagnostic tests." Weidner submitted a timely claim for Total Disability benefits supported by the office notes of her January 3, 2003, visit to Dr. Ormiston and his February 3, 2003, report that Weidner cannot work twenty-five hours per week at any occupation and is "fully disabled" by her multiple sclerosis.

At Broadspire's request, Dr. Vaughn Cohan, a neurologist, conducted a peer review of Dr. Ormiston's reports and office notes from the period January 2001 to February 2003. Dr. Cohan opined "that the objective medical documentation fails to demonstrate evidence of a functional impairment which would preclude the claimant from performing a sedentary job a minimum of 25 hours per week." On February 28,

2003, Broadspire notified Weidner of its initial determination that her condition did not meet the definition of Total Disability. Weidner timely appealed this adverse determination to the Federal Express Benefit Review Committee.

At the Committee's request, Broadspire obtained peer reviews from another consulting neurologist, Dr. Gerald Goldberg. Dr. Goldberg conducted an initial review plus two supplemental reviews to consider additional MRI scans in January 2003 and January 2004. He considered Dr. Ormiston's physician reports and office notes, Dr. Cohan's previous peer review, and the available MRI scan results. He commented that Dr. Ormiston's April 2001 note referred to a functional capacity assessment of Weidner, but "we do not have the results." His two subsequent reports made no reference to this assessment. After each review, Dr. Goldberg concluded that, as of April 2003, Weidner "did not have a functional impairment that would prevent her from engaging in any compensable employment for a minimum of twenty-five hours per week." His supplemental reviews noted that the 2003 and 2004 MRI scans showed no significant change from the January 2002 scan.

At its June 2004 regular meeting, the Committee reviewed Weidner's entire medical record and took into account the fact that she was granted Social Security disability benefits effective December 2000. The Committee voted unanimously to uphold the denial of Total Disability benefits under the Plan. Federal Express summarized the reasons for the Committee's decision in a lengthy August 13, 2004, denial letter and advised Weidner of her right under ERISA to seek judicial review of this final decision.

In granting summary judgment, the district court concluded that the peer reviews by Dr. Cohan and Dr. Goldberg and the MRI scans showing little progression of the disease between 2001 and 2004 are substantial evidence supporting the Committee's denial. In addition, the court noted, the 2001 functional capacity assessment, which was made part of the administrative record, is further evidence that

-4-

Weidner was physically capable of working twenty-five hours a week. Although the court considered Dr. Ormiston's opinion "strong evidence" in Weidner's favor, it noted that Dr. Ormiston was the only physician to conclude that Weidner was physically incapable of working part time. Moreover, the court noted, Dr. Ormiston's "conclusion was influenced by the on-the-job stress incurred by Weidner," whereas the Plan expressly excludes mental impairments such as stress and anxiety from the definition of Total Disability.

## II.

On appeal, Weidner primarily argues that the district court erred in reviewing the Committee's adverse decision under the deferential abuse-of-discretion standard. The deferential standard applies if an ERISA plan expressly grants the administrator discretion to interpret benefit provisions and to determine benefit eligibility, which is conceded in this case.[2] However, less deference is afforded if the decisionmaker labored under a financial conflict of interest that has "a connection to the substantive decision reached," or if a procedural irregularity raises "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1030-31 (8th Cir. 2000) (quotations omitted). Weidner argues that both exceptions apply here.

**A. Procedural Irregularity.** Weidner argues that the Benefit Review Committee committed a number of procedural irregularities in considering her claim for Total Disability benefits: disregarding the opinion of her treating physician;

[2]Weidner argues that Broadspire, rather than Federal Express, functioned as *de facto* Plan administrator, and therefore we should review the denial *de novo* because the Plan does not grant Broadspire discretionary authority to make benefit decisions. We decline to consider this argument because it was not raised in the district court. We note that the Plan grants the Benefit Review Committee discretion to make the final benefit determination. It is the Committee's decision we are reviewing.

failing to consider that she was granted Social Security disability benefits; and relying on an outdated functional capacity assessment. These contentions are without merit because they reflect substantive disagreements with the Committee's analysis of the administrative record, not procedural irregularities.

"When we speak of 'procedural irregularity' in this context . . . we refer to the sorts of external factors that are sufficient under the common law of trusts to call for application of a less deferential standard of review." Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 838 (8th Cir.), cert. denied, 127 S. Ct. 264 (2006). The record discloses nothing irregular in the Committee's gathering and considering the substantive evidence. The peer reviews by Dr. Cohan and Dr. Goldberg expressly considered Dr. Ormiston's contrary opinions and concluded those opinions were not supported by "significant objective findings," as the Plan required. The Committee's August 2004 denial letter stated that the Committee "reviewed all information presented including all medical documentation." The Committee noted but discounted Weidner's Social Security disability determination because it was based on criteria "different from the definition or standard for total disability set forth in the Plan." Finally, the record does not support Weidner's assertion that either the Committee or Dr. Goldberg relied on the 2001 functional capacity assessment. In any event, Weidner submitted no contrary functional capacity evidence, and the assessment was not seriously outdated given the consistent, stable MRI scans in 2002, 2003, and 2004.

Weidner further argues that the Committee committed procedural irregularity when it relied on peer reviews by Dr. Goldberg conducted after the denial of benefits. This argument, too, was not raised in the district court. The Committee obtained Dr. Goldberg's reviews in response to Weidner's administrative appeal of Broadspire's initial denial, prior to the final Total Disability determination. Nothing in the Plan precludes the Committee from considering additional medical evidence in resolving a claimant's administrative appeal. Our decision in Morgan v. UNUM Life Ins. Co.,

346 F.3d 1173, 1178 (8th Cir. 2003), on which Weidner relies, did not categorically preclude such a procedure, which helps ensure an adequate administrative record.[3]

Finally, Weidner argues that the district court's refusal to consider certain internal Broadspire guideline documents that Federal Express produced in discovery constitutes a procedural irregularity. This argument confuses the Committee's administrative review of Weidner's claim with the court's judicial review of the Committee's final decision. Having concluded that no procedural irregularities tainted the administrative process, the district court properly limited its review of the decision to the administrative record before the Committee. That record did not include the internal guidelines of Broadspire, an independent claims administrator.

**B. Conflict of Interest.** Citing district court decisions from other circuits, Weidner argues that Broadspire, as a paid agent of Federal Express, operated under a conflict of interest that triggered a less deferential standard of review. However, under the Plan, Broadspire served as Claims Paying Administrator, not in a fiduciary decisionmaking capacity. Thus, there is no showing of a conflict that "caused a serious breach of the plan administrator's fiduciary duty" to Weidner. Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 588 (8th Cir. 1999). As Weidner has not shown either a procedural irregularity or a conflict of interest sufficiently connected to the Committee's decision, the district court properly applied the deferential abuse of

---

[3]Consistent with ERISA's mandate that plan procedures provide for "full and fair review" of adverse initial determinations, 29 U.S.C. § 1133(2), the Secretary of Labor's regulations require plans providing disability benefits to allow an appeal of an adverse benefits determination to "an appropriate named fiduciary of the plan." In deciding the appeal, the fiduciary must take into account all information submitted by the claimant "whether such information was submitted or considered in the initial benefit determination." The fiduciary is encouraged, if not required, to consult with a health care professional who was not consulted in connection with the initial determination. 29 C.F.R. §§ 2560.503-1(h)(1), (h)(2)(iv), (h)(3)(iii) & (v), (h)(4).

discretion standard in reviewing the Committee's decision to deny her claim for Total Disability benefits.

## III.

Weidner further argues that the Committee abused its discretion in denying her claim because she submitted overwhelming objective medical evidence that her multiple sclerosis is totally disabling. As the district court recognized, Weidner is seriously impaired by multiple sclerosis, and whether that disease was totally disabling in April 2003 is a close question. However, after careful review, like the district court we conclude that substantial evidence in the administrative record as a whole supports the Committee's decision for the reasons stated in the district court's thorough opinion. To briefly summarize, consultative neurology specialists examined the objective medical evidence Weidner submitted and concluded that it did not contain "significant objective findings" of Total Disability, as the Plan requires. Moreover, the annual MRI scans suggested that Weidner's multiple sclerosis progressed very little during the relevant time period. To be sure, the February 2003 opinion of treating physician Ormiston that Weidner continued to be "fully disabled" supports her claim. But ERISA affords courts "no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

The judgment of the district court is affirmed.

_____