# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2523

_____

| | | |
|---|---|---|
| Mary Midgett, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Washington Group International | * | |
| Long Term Disability Plan, | * | |
| | * | |
| Intervenor Defendant/ | * | |
| Appellee, | * | |
| | * | |
| Aetna Life Insurance Company; | * | |
| Broadspire Services, Inc; Washington | * | |
| Group International, Inc.; Washington | * | |
| Group International Short Term | * | |
| Disability Plan, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: January 16, 2009
Filed: April 15, 2009

_____

Before MURPHY and SMITH, Circuit Judges, and LIMBAUGH, District Judge.[1]

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

SMITH, Circuit Judge.

Mary Midgett appeals the district court's[2] grant of the motion for summary judgment brought by Aetna Life Insurance Company, Broadspire Services, Inc., Washington Group International, Inc., and Washington Group International Short Term Disability Plan (collectively "the defendants") on her claim for short-term disability benefits. Midgett argues that the district court erred in granting summary judgment to the defendants because she was denied a full and fair review of her short-term disability claim and because the plan administrator's denial of her claim was arbitrary and capricious. Midgett also appeals the district court's dismissal of her claim for long-term disability benefits for failure to exhaust administrative remedies, arguing that seeking long-term disability benefits would have been futile. We reject Midgett's arguments and affirm the judgment of the district court.

## I. *Background*

Midgett worked as an assistant contract manager for Washington Group International, Inc. ("Washington Group"). Midgett participated in the company's short-term and long-term disability plans, which were governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Broadspire Services, Inc., was the administrator for Washington Group's short-term disability plan when Midgett filed her short-term disability claim, but Aetna Life Insurance Company later replaced Broadspire as the plan administrator when it purchased Broadspire's disability unit. Pursuant to the Washington Group-Broadspire service agreement, Broadspire was "responsible for rendering all claim determinations regarding the terms" of the short-term disability plan and possessed the "discretionary authority to render initial, first and second level appeal claim determinations, including interpreting the terms of the Plan and otherwise making eligibility decisions consistent therewith."

---

[2]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

The medical evidence in Midgett's case is extensive and conflicting. Dr. Ruben Tejada wrote a letter to Midgett's employer in December 2005, observing that Midgett had been under his care since 2002 and describing her condition as follows: "She suffers from various physical maladies, including avascular necrosis and fibromyalgia. During the past 5 years she has had two major surgeries and various minor surgeries . . . . She is on numerous medications to control her medical problems, but even with the medications will have episodes of fibromyalgia." Dr. Tejada stated that he had "known [Midgett] to work against better judgment in fear of losing her job if absent" and recommended that she "be accommodated in all ways to ensure she is not subjected to additional stressors."

On March 7, 2006, Dr. Michael Moore, a hand surgeon, opined that "Midgett's clinical history, physical examination, and x-ray studies are consistent with degenerative arthritis of the right long finger MP joint." Dr. Moore noted that "Midgett was fitted for a hand-based splint to wear as needed" and that "she will buddy tape the index, long, and ring fingers when she uses her right hand." That same day, Dr. Reginald Rutherford, a neurologist, administered a motor nerve conduction study, a sensory nerve conduction study, and a needle examination. The results of these tests were normal, and Dr. Rutherford stated that "[t]here is no evidence via electrodiagnostic parameters to suggest cervical radiculopathy, brachial plexopathy, ulnar neuropathy or median neuropathy right upper extremity." On March 8, 2006, and March 13, 2006, Midgett visited Dr. John Harris, who concluded that Midgett suffered from fatigue and fibromyalgia.

On March 13, 2006, Midgett filed a claim for short-term disability benefits, reporting her last day of work as March 3, 2006, and her first day of disability as March 6, 2006. Midgett's claims examiner informed Midgett that her medical information would be forwarded for a peer review.

Dr. Michael Courtney, a chiropractor, examined Midgett on March 20, 2006, and opined that Midgett was disabled. Dr. Yvonne Sherrer, a rheumatologist, completed a peer review of Midgett's medical record on March 27, 2006. Dr. Sherrer reviewed medical information received from Dr. Harris, including office notes from Midgett's March 8 and March 13 appointments and a March 13 lab report. Dr. Sherrer noted that although Midgett had "a history of fibromyalgia," the March 8 and March 13 progress notes did "not document significant abnormalities on musculoskeletal exam or objective functional limitation." Dr. Sherrer also spoke with Dr. Harris, who stated that he had been treating Midgett for approximately three weeks and did not feel comfortable making a disability determination. Dr. Sherrer concluded that the record did not support a functional impairment that would prevent Midgett from performing her sedentary duties as an assistant contract manager.

Following a new patient consultation on April 4, 2006, Dr. Tamer Alsebai, a rheumatologist, stated that he was unsure whether Midgett would be able to return to work because of "her multiple conditions and . . . medications." MRIs of Midgett's lumbar and cervical spine performed that day revealed "evidence of grade I degenerative anterior spondylolisthesis" and "[m]ultilevel spondyloarthropathic changes."

Dr. Sherrer reviewed Midgett's chiropractic records and an additional job description as part of a second peer review completed on April 10, 2006. Dr. Sherrer concluded that this additional information did not alter her previous determination, noting that although the chiropractic report indicated that Midgett suffered from "degenerative changes," it failed to "document functional abnormalities that would be expected to prevent [Midgett] from doing sedentary or light work." A bone densitometry study conducted on April 10 revealed "[o]steoporosis involving the right hip."

On April 12, 2006, Midgett's claims examiner informed Midgett that Broadspire had denied her short-term disability claim but that she was entitled to appeal that decision. Midgett appealed Broadspire's decision on May 9, 2006, submitting additional medical records for review.

Following the denial of her short-term disability claim, Midgett was examined by a number of other doctors. On April 17, 2006, she was examined by Dr. David Silas, a neurologist, whose impression was that Midgett suffered from lumbar disc disease, cervical degenerative disc disease, essential tremor, and fibromyalgia. In May 2006, Dr. Harold Chakales diagnosed Midgett with cervical degenerative disc disease, grade I spondylolisthesis, fibromyalgia, and osteoporosis. He opined that Midgett had suffered from total disability since March 3, 2006, and might not be able to return to work. A nerve conduction study conducted on May 24, 2006, revealed normal nerve conduction velocity in Midgett's left leg and "[p]robable mild chronic bilateral S1 radiculopathies, right worse than left."

Four additional peer reviews were completed in July 2006. First, Dr. Wendy Weinstein, an internal medicine specialist, acknowledged Midgett's fibromyalgia diagnosis but found no functional impairment that precluded Midgett from performing her sedentary job duties. Second, Dr. Vaughn Cohan, a neurologist, concluded that there was no evidence that Midgett could not perform her sedentary job duties despite her fibromyalgia, musculoskeletal pain, and degenerative arthritis. Dr. Cohan also noted that "[i]t is stated in the literature that patients with fibromyalgia syndrome do much better by remaining active than by allowing themselves to avoid normal activities of daily living and work-related activities." Third, Dr. Lawrence Burstein, a psychologist, found that Midgett's medical record did not support the presence of psychological impairments that would prevent her from performing the core functions of her job. Fourth, Dr. Jacques Caldwell, a rheumatologist, concluded that Midgett's medical record did not reflect the existence of a rheumatologic condition that would

prevent her from performing her job duties and that there was no evidence that her medications affected her ability to work.

In a letter dated August 6, 2006, Dr. Chakales stated that Midgett was "permanently totally disabled and unable to work," explaining that she was unable to work 40 hours per week, required periods of rest, and must avoid prolonged sitting, stooping, and bending. On August 14, 2006, Midgett visited Dr. Bruce Safman, who observed that (1) Midgett's "examination did not demonstrate any significant pathology in the upper or lower extremities or trunk," (2) "her pain is under fairly good control," and (3) "[i]t was difficult to discern whether anxiety is playing a role in her symptoms." Following an exam on August 17, 2006, Dr. Tracy Phillips reported that Midgett (1) could sit for two hours and stand or walk for two hours in an eight-hour workday and (2) could lift up to ten pounds occasionally and never lift more than ten pounds. Broadspire denied Midgett's first-level appeal on August 21, 2006, and Aetna received Midgett's second-level appeal on October 24, 2006.[3] Midgett was awarded Social Security disability benefits on September 27, 2006.

Dr. Barry McDonald, a psychologist, examined Midgett on six occasions between February and April of 2007. In his psychological assessment, Dr. McDonald concluded that "it is unlikely that Mrs. Midgett could perform her former duties adequately."

In a deposition taken on May 9, 2007, Dr. Chakales explained that Midgett suffered from "symptomatic first degree spondylolisthesis, L5-S1, with chronic nerve root compression, primarily on the left side," as well as "symptomatic cervical spondylosis." Dr. Chakales stated that he did not believe that Midgett "could

---

[3]The Washington Group-Broadspire service agreement required Broadspire to provide claimants two levels of appeal following an initial denial of a claim for benefits.

-6-

withstand the rigors" of full-time employment, and he reiterated that, in his opinion, Midgett was "permanently and totally disabled."

Dr. Lawrence Blumberg, an orthopedic surgeon, Dr. Elana Mendelssohn, a neuropsychologist, and Dr. Jakob Ulfarrson, a rheumatologist, completed peer reviews in June 2007. Each peer reviewer concluded that the medical evidence did not indicate that Midgett was suffering from a condition that would prevent her from performing her job duties. Following the completion of these peer reviews, Aetna denied Midgett's second-level appeal.

Midgett brought an action against the defendants in federal district court pursuant to 29 U.S.C. § 1132, seeking a declaratory judgment that she was entitled to short-term and long-term disability benefits. Washington Group's long-term disability plan moved to intervene, and, along with Aetna and Broadspire, moved to dismiss Midgett's long-term disability claim. The district court granted both motions.

Midgett and the defendants filed cross-motions for summary judgment. The district court denied Midgett's summary judgment motion and granted the defendants' summary judgment motion, holding that "the plan administrator's denial of [Midgett's short-term disability] claim was not arbitrary or capricious" in light of the following considerations: "(1) Dr. Harris, [Midgett's] primary care physician, was uncomfortable classifying [Midgett] as disabled; (2) numerous treating physicians' notes were silent as to disability; (3) none of the peer review physicians found [Midgett] disabled; and (4) plan administrators need not accord greater weight to treating physicians than peer review physicians." *Midgett v. Aetna Life Ins. Co.*, No. 5:07-CV-00233-WRW, 2008 WL 2669264, at *9 (E.D. Ark. July 1, 2008).

II. *Discussion*

On appeal, Midgett argues that the district court erred in granting the defendants' motion for summary judgment as to her short-term disability claim and in dismissing her long-term disability claim.

A. *Summary Judgment on Midgett's Short-Term Disability Claim*

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court." *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006). But "[w]hen an ERISA plan grants the administrator discretion to construe the plan and to determine benefits eligibility, as in this case, both courts must apply a deferential abuse-of-discretion standard in reviewing the plan administrator's decision." *Jessup v. Alcoa, Inc.*, 481 F.3d 1004, 1006 (8th Cir. 2007).

1. *Full and Fair Review*

Midgett first argues that the district court erred in granting the defendants' motion for summary judgment as to her short-term disability claim because she did not receive the full and fair review of that claim required by 29 U.S.C. § 1133(2). Under ERISA, employee benefit plans must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). "In accordance with the authority of . . . 29 U.S.C. [§] 1133," 29 C.F.R. § 2560.503-1 "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits." 29 C.F.R. § 2560.503-1(a).

Following Broadspire's denial of Midgett's first-level appeal, Dr. Blumberg, Dr. Mendelssohn, and Dr. Ulfarrson completed peer reviews in which they concluded that the medical evidence did not support the conclusion that Midgett was suffering from a condition that would prevent her from performing her job duties. Aetna relied on these peer reviews in denying Midgett's second-level appeal.

Midgett alleges that Aetna failed to provide her with access to the peer reviews of Dr. Blumberg, Dr. Mendelssohn, and Dr. Ulfarrson until after Aetna rendered its decision. According to Midgett, she was entitled to review and rebut these peer reviews before Aetna denied her second-level appeal. In support of her argument, Midgett relies principally on our decision in *Abram v. Cargill, Inc.*, 395 F.3d 882 (8th Cir. 2005). In *Abram*, the plan administrator denied the claimant's long-term disability claim. *Id.* at 885. On administrative appeal, the claimant submitted a functional capacity evaluation (FCE) supporting her disability claim. *Id.* The plan administrator sent the FCE to an independent medical examiner, who concluded that the FCE did not establish that the claimant was disabled. *Id.* On the basis of the independent medical examiner's report, the plan administrator denied the claimant's appeal "almost a month after its decision was due." *Id.* The claimant appealed the decision to the district court, which granted summary judgment to the plan administrator. *Id.*

We explained in *Abram* that "[f]ull and fair review includes the right to review all documents, records, and other information relevant to the claimant's claim for benefits, and the right to an appeal that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." *Id.* at 886. The plan administrator solicited the independent medical examiner's report "after the deadline for an appeals decision had passed" and sent the report to the claimant "only after the Plan issued its final denial decision." *Id.* We stated that "[t]his type of 'gamesmanship' is inconsistent with full and fair review." *Id.* (quoting *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 403 (7th Cir. 1996)). We concluded that "[t]he process used by the Plan was not consistent with a full and fair review" because the claimant "was not provided access to the . . . report . . . that served as the basis for the Plan's denial of benefits until after the Plan's decision." *Id.* Noting that "[a] claimant is caught off guard when new information used by the appeals committee emerges only with the final denial," we held that the claimant "should have been permitted to review and respond to the report." *Id.*

Midgett contends that just as the claimant in *Abram* was denied the opportunity to review and dispute the independent medical examiner's report, she was denied the opportunity to review and rebut the peer reviews of Dr. Blumberg, Dr. Mendelssohn, and Dr. Ulfarrson. But this case presents "one of those exceptional circumstances where a change in the law renders a prior decision non-binding." *Buchholz v. Aldaya*, 210 F.3d 862, 866 (8th Cir. 2000). In 2000, the Department of Labor amended the "minimum procedural requirements for benefit claims under employee benefit plans." 65 Fed. Reg. 70,246, 70,246 (Nov. 21, 2000). The amended requirements "apply to claims filed under a group health plan on or after the first day of the first plan year beginning on or after July 1, 2002, but in no event later than January 1, 2003," and "to claims filed under [other] plan[s] on or after January 1, 2002." 66 Fed. Reg. 35,886, 35,888 (July 9, 2001) (codified at 29 C.F.R. § 2560.503-1(o)). Because the claimant in *Abram* filed for benefits in 2000, 395 F.3d at 884, the amended Department of Labor requirements were inapplicable to her claim.

The regulatory scheme applicable to the claim in *Abram* required employee benefit plans to establish and maintain an appeal procedure under which a claimant was entitled to "[r]eview pertinent documents," 29 C.F.R. § 2560.503-1(g)(1)(ii) (2000), but it did not specify what constituted a "pertinent" document. In light of the "substantial public confusion concerning the meaning of the term 'pertinent,'" the Department of Labor substituted "relevant" for "pertinent" and "provide[d] a specific definition of that term" in its 2000 amendments. 65 Fed. Reg. 70,246, 70,252. The regulatory scheme governing the claim in *Abram* also failed to specify when a claimant was entitled to "review pertinent documents." 29 C.F.R. § 2560.503-1(g)(1)(ii) (2000). But the amended regulations set forth specific stages in the claims process at which a claimant is entitled to review the materials "relevant" to his or her claim.

Section 2560.503-1(h) of the amended regulations is entitled "Appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(h). Section 2560.503-1(h)(1)

requires employee benefit plans to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination." Under § 2560.503-1(h)(2)(iii), a plan only provides a claimant with a full and fair review of a claim and adverse benefit determination if "the claims procedures . . . [p]rovide that [the] claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." The "adverse benefit determination" referred to throughout § 2560.503-1(h) is the plan administrator's initial denial of a claim for benefits. *See Price v. Xerox Corp.*, 445 F.3d 1054, 1056 (8th Cir. 2006) (stating that the regulation's language "indicates that only the initial denial of benefits is an 'adverse benefit determination'"). Accordingly, following an initial denial of a claim for benefits, § 2560.503-1(h)(2)(iii) entitles a claimant to review the materials relevant to his or her claim. Midgett concedes that she received copies of her administrative record following Broadspire's initial denial of her short-term disability claim.

Section 2560.503-1(I) of the amended regulations sets forth the time limits within which a claimant must be notified of a "benefit determination *on review*." 29 C.F.R. § 2560.503-1(i)(1)–(4) (emphasis added). Section 2560.503-1(i)(5) provides as follows: "In the case of an adverse benefit determination *on review*, the plan administrator shall provide such access to, and copies of, documents, records, and other information described in paragraphs (j)(3), (j)(4), and (j)(5) of this section as is appropriate." (Emphasis added.) Section 2560.503-1(j)(3), in turn, refers to "all documents, records, and other information relevant to the claimant's claim for benefits." "The inclusion of the language 'on review' [in § 2560.503-1(i)(5)] differentiates the initial 'adverse benefit determination' from later internal appeals of it." *Price*, 445 F.3d at 1057. Accordingly, following a denial of a first-level or second-level appeal, § 2560.503-1(i)(5) entitles a claimant to review the materials relevant to his or her claim on appeal.

-11-

Midgett does not contend that she was denied the opportunity to review materials in connection with Broadspire's denial of her first-level appeal; indeed, because the peer reviews of Dr. Blumberg, Dr. Mendelssohn, and Dr. Ulfarrson were completed subsequent to the denial of her first-level appeal, they were only "relevant" to Aetna's determination of her second-level appeal. *See* 29 C.F.R. § 2560.503-1(m)(8) (defining material as "relevant" if, inter alia, it "[w]as relied upon in making the benefit determination" or "[w]as submitted, considered, or generated in the course of making the benefit determination"). Nor does Midgett contend that she was denied access to the peer reviews following Aetna's denial of her second-level appeal. Instead, she argues that she was entitled to review and rebut the peer reviews before Aetna denied her second-level appeal. But the amended regulations state that Midgett was entitled to access those peer reviews only after Aetna made its "adverse benefit determination on review." 29 C.F.R. § 2560.503-1(i)(5).

Section 2560.503-1(h)(3)(iii), another amendment to the Department of Labor regulations that was inapplicable to the claim in *Abram*, also runs counter to Midgett's argument that she was entitled to review and rebut the peer reviews of Dr. Blumberg, Dr. Mendelssohn, and Dr. Ulfarrson prior to Aetna's determination of her second-level appeal. Section 2560.503-1(h)(3)(iii) clarifies the nature of review to which a claimant is entitled. This section states that the claims procedures of a group health plan only provide a claimant with a full and fair review of a claim and adverse benefit determination if the procedures "[p]rovide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, . . . the appropriate named fiduciary shall consult with a health care professional." Conspicuously absent from § 2560.503-1(h)(3)(iii) is any requirement that the claimant be given the opportunity to review and rebut the health care professional's conclusion.

Furthermore, we agree with the observation of the Tenth Circuit that requiring a plan administrator to grant a claimant the opportunity to review and rebut medical

-12-

opinions generated on administrative appeal "would set up an unnecessary cycle of submission, review, re-submission, and re-review." *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166 (10th Cir. 2007). Such a cycle "would undoubtedly prolong the appeal process, which, under the regulations, should normally be completed within 45 days." *Id.* (citing 29 C.F.R. § 2560.503-1(i)(3)(i)). As noted by the Tenth Circuit, because the amendments to § 2560.503-1 did not apply to the claim in *Abram*, we "did not consider the potential for circularity of review" in that case. *Id.* at 1167 n.3.

Finally, our interpretation of the full and fair review to which a claimant is entitled under 29 U.S.C. § 1133(2), as clarified in 29 C.F.R. § 2560.503-1, is supported by the Department of Labor's rationale for adopting the definition of "relevant" in 29 C.F.R. § 2560.503-1(m)(8). The Department of Labor explained that it "believes that this specification of the scope of the required disclosure of 'relevant' documents will serve the interests of both claimants and plans by providing clarity as to plans' disclosure obligations, while *providing claimants with adequate access to the information necessary to determine whether to pursue further appeal*." 65 Fed. Reg. 70,246, 70,252 (emphasis added). According to the Department of Labor, "the purpose of the production of these documents is to enable a claimant to evaluate whether to appeal an adverse determination." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). And the determination that claimants are entitled to "pre-decision access to relevant documents generated during the administrative appeal—would nullify the Department's explanation. Access to documents during the course of an administrative decision would not aid claimants in determining 'whether to pursue further appeal,' because claimants would not yet know if they faced an adverse decision." *Metzger*, 476 F.3d at 1167.

The amendments to § 2560.503-1 enacted in 2000, which were inapplicable to the claim in *Abram*, indicate that the full and fair review to which a claimant is entitled under 29 U.S.C. § 1133(2) does not include reviewing and rebutting, prior to

a determination on appeal, the opinions of peer reviewers solicited on that same level of appeal. Therefore, we conclude that Midgett was not denied a full and fair review of her claim by Aetna's failure to provide her the opportunity to review and rebut the peer reviews of Dr. Blumberg, Dr. Mendelssohn, and Dr. Ulfarrson prior to denying her second-level appeal.

Midgett's remaining contentions in support of her argument that she was denied a full and fair review of her claim are without merit. Midgett emphasizes that (1) the peer reviews were performed by physicians who had never examined her; (2) the peer reviewers were unidentified other than by name, title, and academic degree; (3) the peer reviews appear on a form bearing Broadspire's corporate logo; and (4) the notice she received of Aetna's denial of her second-level appeal did not specifically address certain evidence supporting her claim. But Midgett cites no authority—and we are aware of none—requiring peer reviews to be performed by examining physicians, requiring a plan administrator to provide detailed credentials of peer reviewers, or prohibiting peer reviews from appearing on a plan administrator's form. Additionally, 29 C.F.R. § 2560.503-1(j) sets forth the requisite content of a notification of a benefit determination on review, and it does not require the plan administrator to discuss specific evidence submitted by the claimant. Accordingly, we hold that Midgett was not denied a full and fair review of her claim.

## 2. *Arbitrary and Capricious*

Midgett next argues that the district court erred in concluding that the plan administrator's denial of her short-term disability claim was not arbitrary and capricious. Under the abuse of discretion standard applicable in this case, we will "reverse the plan administrator's decision 'only if it is arbitrary and capricious.'" *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006) (quoting *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004)). To determine whether a plan administrator's decision was arbitrary and capricious, "we ask whether the decision to deny . . . benefits was supported by substantial evidence, meaning more

than a scintilla but less than a preponderance." *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). "Provided the decision 'is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.'" *Id.* (quoting *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)). "The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir. 2002) (internal quotation marks omitted).

The crux of Midgett's argument is that Broadspire and Aetna improperly disregarded the conclusions of Dr. Chakales and Dr. McDonald, who had examined her, and relied instead on the conclusions of the peer reviewers, who had not examined her. The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

In *Weidner v. Fed. Express Corp.*, we applied *Nord* to hold that a plan administrator did not abuse its discretion in denying a claimant total disability benefits despite a treating physician's opinion that the claimant was "fully disabled." 492 F.3d 925, 930 (8th Cir. 2007). We emphasized that consultative specialists had concluded

-15-

that the medical evidence did not reflect total disability and that the claimant's annual MRI scans indicated that her condition had "progressed very little during the relevant period." *Id.* Likewise, in *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, we rejected the contention that the plan administrator abused its discretion when it "credited [a peer reviewer's] analysis over [a primary care physician's] conclusions because [the peer reviewer] did not physically examine [the claimant]." 456 F.3d 894, 899 (8th Cir. 2006). We noted that "[w]e have held . . . that a plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial." *Id.* at 899–900 (citing *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006); *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002)).

The decision to deny Midgett's short-term disability claim "was supported by substantial evidence." *Schatz*, 220 F.3d at 949. First, the eight peer reviewers unanimously concluded that the evidence did not support Midgett's short-term disability claim. Midgett attempts to discount the peer reviews, characterizing them as "conclusory." She relies on *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, in which the Sixth Circuit held that the plan administrator "acted arbitrarily and capriciously in denying [the claimant] disability benefits on the basis of his cardiac condition." 419 F.3d 501, 511 (6th Cir. 2005). The court specifically noted that the plan administrator relied exclusively on the conclusion of a peer reviewer who had not physically examined the claimant and rejected the conclusion of a physician who had examined the claimant on numerous occasions. *Id.* at 509. The court emphasized that the peer reviewer's report was "inadequate" because, inter alia, it failed to mention certain contrary findings and failed to rebut the contrary conclusions reached by the examining physician. *Id.* at 510. In contrast, the peer reviews in this case, viewed together, accurately represent Midgett's medical record and adequately address the evidence supporting her claim for disability. In particular, Dr. Blumberg and Dr. Cohan acknowledged the findings of Dr. Chakales, and Dr. Mendelssohn

acknowledged the findings of Dr. McDonald, but they all explained that these findings did not demonstrate that Midgett was unable to perform her job duties.

In addition to the peer reviews, the results of Dr. Rutherford's nerve conduction studies and needle examination were normal, and Dr. Safman noted that Midgett's examination did not reveal a significant pathology in her trunk or extremities and that Midgett's pain was under control. "Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled." *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001). In light of the conflicting medical opinions in this case, the denial of Midgett's short-term disability claim was not arbitrary and capricious.

Because Midgett was not denied a full and fair review of her claim and the denial of her claim was not arbitrary and capricious, we affirm the district court's grant of summary judgment to the defendants.

## B. *Dismissal of Midgett's Long-Term Disability Claim*

Midgett also argues that the district court erred in dismissing her long-term disability claim for failure to exhaust administrative remedies. "In this circuit, benefit claimants must exhaust [the benefits appeal] procedure before bringing claims for wrongful denial to court." *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir. 2001). Indeed, "[w]here a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." *Layes v. Mead Corp.*, 132 F.3d 1246, 1252 (8th Cir. 1998). But "[a] party may be excused from exhausting administrative remedies . . . if further administrative procedures would be futile," and "[a]n administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief." *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006). "[U]nsupported and speculative" claims of futility do not excuse a claimant's failure

-17-

to exhaust his or her administrative remedies. *Klaudt v. U.S. Dep't of Interior*, 990 F.2d 409, 412 (8th Cir. 1993).

Washington Group provided long-term disability benefits through a group disability insurance policy issued by Highmark Life Insurance Company. Highmark's group insurance certificate states that a claimant may not commence a legal action until 60 days after providing proof of a claim, but Midgett never applied for long-term disability benefits. Midgett contends that it would have been futile for her to pursue a long-term disability claim in light of the denial of her short-term disability claim.

Highmark's group insurance certificate states that long-term disability benefits are only payable upon the expiration of the "Benefit Qualifying Period," which begins on the day the beneficiary becomes disabled and "ends upon the last to occur of" the following:

> 1. The termination of your benefits under any salary continuation or short term disability benefits plan sponsored by the Policyholder;
>
> 2. The exhaustion of your accumulated sick leave days provided by the Employer; or
>
> 3. 26 weeks after the date you became Disabled.

Midgett interprets the group insurance certificate as providing that long-term disability benefits are not payable unless all three of these events occur. According to Midgett, it would have been futile for her to seek long-term disability benefits because the termination of short-term disability benefits is one of the events necessary for the benefit qualifying period to end and she never received short-term disability benefits.

Midgett's interpretation is contradicted by other language in the certificate. Specifically, the certificate requires a beneficiary "to apply for any other benefits for

loss of income that [he or she] may also be eligible for as a result of the same period of disability" and states that the beneficiary may be required to "appeal a denial of [his or her] claim for these other benefits." The certificate thereby implies that the denial of a claim for other loss of income benefits does not preclude a beneficiary from receiving long-term disability benefits.

Furthermore, under Midgett's interpretation of the group insurance certificate, a beneficiary with no "accumulated sick leave days provided by the Employer" would also be ineligible to receive long-term disability benefits because that beneficiary would fail to satisfy each of the three events listed in the certificate. Such an absurd result seriously undermines Midgett's interpretation. *See St. Louis-San Francisco Ry. Co. v. Armco Steel Corp.*, 490 F.2d 367, 371 (8th Cir. 1974) ("The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.").

We believe that the most natural and reasonable reading of Highmark's group insurance certificate is that "[t]he termination of . . . short term disability benefits" is one of the triggering events for the end of the benefit qualifying period only if such benefits are actually received. Because Midgett's claim for short-term disability benefits was denied, her benefit qualifying period would have ended upon the later of (1) the exhaustion of her accumulated sick leave days, if any, or (2) 26 weeks after the date she became disabled.

Because it would not have been futile for Midgett to seek long-term disability benefits, she was required to fully exhaust Highmark's claims procedure before bringing her claim for long-term disability benefits in district court. We hold, therefore, that the district court did not err in dismissing Midgett's long-term disability claim for failure to exhaust administrative remedies.

-19-

### III. *Conclusion*

Because we hold that the district court did not err in granting the defendants' motion for summary judgment as to Midgett's short-term disability claim and in dismissing Midgett's long-term disability claim, we affirm the judgment of the district court.

_____