Christopher S. WALTER, Plaintiff,

v.

STANDARD INSURANCE COMPANY,
Defendant.

Case No. 14–00921–CV–W–REL

United States District Court,
W.D. Missouri, Western Division.

Signed September 24, 2015

Filed September 25, 2015

Roger M. Driskill, Burnett & Driskill, Liberty, MO, for Plaintiff.

Richard J. Pautler, Thompson Coburn LLP, St. Louis, MO, for Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

ROBERT E. LARSEN, United States Magistrate Judge

Before the court is Defendant Standard Insurance Company's motion for summary judgment. For the following reasons, the motion will be granted.

## I. BACKGROUND

On October 22, 2014, Plaintiff Christopher Walter filed a complaint against Defendant Standard Insurance Company for recovery of employment disability benefits (Doc. No. 1). Defendant filed a motion for summary judgment and suggestions in support (Doc. Nos. 13, 14). Plaintiff filed suggestions in opposition (Doc. No. 19) and Defendant filed a reply (Doc. No. 20).

## II. STANDARD OF REVIEW UNDER ERISA

■■■ When a disability plan gives discretion to the administrator, the administrator's decision is reviewed for abuse of discretion. *Green v. Union Sec. Ins. Co.,* 646 F.3d 1042, 1050 (8th Cir.2011). "In reviewing for an abuse of discretion, the administrator's decision should be reversed 'only if it is arbitrary and capricious.'" *Id. (quoting Midgett v. Washington Grp. Int'l Long Term Disability Plan,* 561 F.3d 887, 896 (8th Cir.2009)). "The administrator's decision should be affirmed if it is reasonable, meaning it is supported by substantial evidence." *Green,* 646 F.3d at 1050. "Substantial evidence is more than a scintilla but less than a preponderance." *Id.* "'The requirement that the plan administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id. (quoting Midgett,* 561 F.3d at 897)(quoting *Jackson v. Metro. Life Ins.*

*Co.,* 303 F.3d 884, 887 (8th Cir.2002))(emphasis in original).

## III. UNCONTROVERTED FACTS

Below, typed in bold, are the facts offered by Defendant that I find to be uncontroverted by the record before me.

1. **Plaintiff, Christopher S. Walter ("Walter") is a former employee of Graham Ship By Truck Company ("Graham").**

Plaintiff does not dispute this fact.

2. **While an employee of Graham, Walter was a participant in an employee welfare benefit plan sponsored by Graham that provided disability benefits to eligible, qualifying participants (hereinafter "LTD Plan").**

Plaintiff does not dispute this fact.

3. **The LTD Plan was insured by Group Long Term Disability Insurance Policy No. 143812–B issued by Standard ("Policy").**

Plaintiff does not dispute this fact.

4. **Walter's W–2 from Graham for 2007 showed wages, tips and other compensation of $50,270.**

Plaintiff does not dispute this fact.

5. **Walter was injured in a motor vehicle accident on January 17, 2008.**

Plaintiff does not dispute this fact.

6. **Walter's W–2 from Graham for 2008 showed wages, tips and other compensation of $53,790.**

Plaintiff does not dispute this fact.

7. **Graham advised Standard that during 2008, Walter earned $1,020/week until late in the year when he earned a raise to $1,040/week.**

Plaintiff does not dispute this fact.

8. **Graham advised Standard that Walter earned a standard Christmas bonus of $750 in 2008.**

Plaintiff does not dispute this fact.

9. Graham advised Standard that Walter had been involved in a motor vehicle accident on January 17, 2008, that he missed work the following Friday and Monday, that he worked Tuesday and then worked half-days Wednesday, Thursday and Friday before returning full-time on Monday, January 28, 2008.

Plaintiff does not dispute this fact.

10. Walter did not submit any evidence that he had missed any work at Graham after January 28, 2008 because of any medical condition.

Plaintiff disputes this proposed fact, citing evidence that he had doctors' appointments on September 29, 2008, October 27, 2008, December 2, 2008 and December 23, 2008. This fact is remains controverted.

11. According to the terms of the Policy, an individual was "Disabled" from his Own Occupation:

If as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and

2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

Plaintiff does not dispute this fact.

12. The LTD Plan includes a 90–day Benefit Waiting Period.

Plaintiff does not dispute this fact.

13. The Benefit Waiting Period "means the period you [i.e. the participant] must be continuously Disabled before LTD Benefits become payable. No LTD Benefits are payable for the Benefit Waiting Period."

Plaintiff does not dispute this fact.

14. Under the terms of the LTD Plan, a participant's insurance ended automatically on the date his employment terminated.

Plaintiff does not dispute this fact.

15. Walter submitted a claim to Standard for LTD Plan benefits in July 2011.

Plaintiff does not dispute this fact.

16. In its Employer's Statement submitted as a part of Walter's claim, Graham reported that Walter "was layed (sic) off in 1–2009 and was not disabled" and that Walter's employment terminated because "Layed off—economic reasons 1–2009."

Plaintiff does not dispute this fact.

17. In an email, Graham advised Standard that Walter's employment with Graham (along with that of another employee) terminated January 23, 2009 "due to economic reasons."

Plaintiff does not dispute this fact.

18. Graham advised Standard during a telephone interview that Walter had never missed work after he returned to work January 28, 2008 following his January 17 accident and that at the time he was laid off, Walter had been "fully capable."

Plaintiff disputes this fact, arguing that he did miss work for medical issues following his accident and that he performed modified duty from January 29 to June 18, 2008. This does not refute what Graham advised Defendant during the telephone interview. I find this fact to be uncontroverted.

19. Walter represented to Standard that he had worked at Graham through January 30, 2009.

Plaintiff does not dispute this fact.

20. Walter represented to Standard that his last full day of work with any employer was February 1, 2010.

Plaintiff does not dispute this fact.

21. Walter's 2009 W–2 from Graham shows wages, tips and other compensation of $6,120.

Plaintiff does not dispute this fact.

22. Walter reported to Standard that following his termination from Graham, he went to work in March 2009 for Express 2000, Inc. at a salary of $52,000/year and that he worked at Express 2000, Inc. for the period March 2, 2009 through March 27, 2009.

Plaintiff does not dispute this fact.

23. Walter's 2009 W–2 from Express 2000 Inc. shows wages, tips and other compensation of $10,160.94.

Plaintiff does not dispute this fact.

24. Walter reported to Standard that upon leaving his employment with Express 2000, Inc. he went to work in April 2009 for CRH Transportation at a salary of $52,000/year.

Plaintiff does not dispute this fact.

25. According to Walter's tax return, he earned $35,969 during 2009.

Plaintiff does not dispute this fact.

26. Walter had a second motor vehicle accident on July 24, 2009, six months after leaving the employment of Graham.

Plaintiff dose not dispute this fact.

27. The second motor vehicle accident caused him to have headaches, blurred vision, dizziness and body stiffness.

Plaintiff does not dispute this fact.

28. Standard denied Walter's claim by letter dated December 5, 2011.

Plaintiff does not dispute this fact.

29. Walter appealed from that initial denial and Standard affirmed its denial by letter dated January 23, 2013.

Plaintiff does not dispute this fact.

30. Walter never submitted to Standard any document from any doctor opining that Walter in January 2009 was unable to perform with reasonable continuity the Material Duties of his Own Occupation.

Plaintiff disputes this fact, citing Dr. Simon's report in which he opined that as of October 2008, Plaintiff was capable of completing four hours in an eight-hour workday and had no useful ability to deal with the stress of a typical "low stress" job such as getting to work regularly and on time, etc. (Adm.Rec. 96). I find this fact to remain controverted.

31. The LTD Plan grants discretion to Standard.

Plaintiff does not dispute this fact.

32. The Group Policy provides that Standard has:

full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation and application of the Group Policy.

Our authority includes, but is not limited to:

1. The right to resolve all matters when a review has been requested;

2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3. The right to determine:
   a. Eligibility for insurance;
   b. Entitlement to benefits;
   c. The amount of benefits payable; and
   d. The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

Plaintiff does not dispute this fact.

33. The LTD Plan provides:

No action at law or in equity may be brought until 60 days after you have give us Proof of Loss. No such action may be brought more than five years after the earlier of:

1. The date we receive Proof of Loss; and

2. The time with which Proof of Loss is required to be given.

Plaintiff does not dispute this fact.

## IV. ADDITIONAL UNCONTROVERTED FACTS

In response, Plaintiff offered additional uncontroverted facts. Below, typed in bold, are the facts offered by Plaintiff that I find to be uncontroverted.

1. **In an opinion Dr. Mark Shih [rendered] for Standard, a review of medical records shows the Insured worked modified duty from January 29 to June 18, 2008.**

Defendant does not dispute that Dr. Shih's memo states a review of physical therapy notes indicated Plaintiff reported he worked modified duty. This fact is uncontroverted.

2. **Graham informed Standard that the Insured "[took 14 days of vacation during the year], 7/7–11, 9/29, 10/27, 11/26, 12/2, 12/22–26, 12/31 and 1/2/2009."**

Plaintiff's fact, as proposed, states that he "missed 14 days of work, 7/7–11, 9/29, 10/27, 11/26, 12/2, 12/22–26, 12/31 and 1/2/09" and cites page 309 of the Administrative Record in support. Review of the cited evidence reveals that Graham informed Standard that Plaintiff *"took 14 days of vacation during the year, 7/7–11, 9/29, 10/27, 11/26, 12/2, 12/22–26, 12/31 and 1/2/2009"* (emphasis added). Plaintiff's proposed fact is uncontroverted as modified to provide an accurate quotation.

3. **During July 7 through the 11th, the Insured attended a doctor's appointment for pain management and called his doctor to get a prescription for a cold sore.**

Defendant admits Plaintiff called his doctor on July 8, 2008 to complain of a cold sore and saw Dr. Campobasso on July 3, 2008, for a follow-up on his cervical sprain/strain. This fact is uncontroverted.

4. **The Insured had doctor's appointments with Dr. Simon on the following days off: September 29, October 27, December 2, and December 23.**

Defendant admits that Plaintiff saw Dr. Simon on October 27, 2008 and December 23, 2008 for "routine evaluation." Defendant further admits that Plaintiff saw Dr. Simon on September 29, 2008 for an evaluation during which Plaintiff reported he continued to do more and more activity, and that Plaintiff saw Dr. Simon on December 2, 2008, for a headache. This fact is uncontroverted.

5. **Dr. Simon's opinion states that beginning in October 2008 the Insured is capable of completing 4 hours in an 8 hour workday and has no useful ability to deal with**

the stress of a typical "low stress" job such as getting to work regularly and on time, etc.

Defendant admits that in January of 2010, Dr. Simon completed a Physician's Residual Functional Capacity Form 9 that Plaintiff's attorney requested he complete as part of a Social Security claim. This fact is uncontroverted.

6. **The workmans' compensation settlement shows a 40% whole body impairment arising from the accident on January 17, 2008.**

Defendant does not dispute this fact.

7. **The LTD Plan provides:**

**No Action at law or in equity may be brought until 60 days after you have given us Proof of Loss. No such action may be brought more than five years after the earlier of:**

**1. The date we receive Proof of Loss; and**

**2. The time with which Proof of Loss is required to be given.**

Defendant does not dispute this fact.

8. **The LTD Plan provides:**

**Time Limits on Filing Proof of Loss**

**You must give us Proof of Loss within 90 days after the end of Benefits Waiting Period. If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year after that 90–day period. If Proof of Loss is filed outside these time limits, your claim will be denied. These limits will not apply while you lack legal capacity.**

Defendant does not dispute this fact.

9. **The Insured worked for CRH in sales for one month in April 2009.**

Defendant admits that Plaintiff reported to Standard that upon leaving his employment with Express 2000,

Inc. he went to work in April 2009 for CRH Transportation at a salary of $52,000/year. This fact is uncontroverted.

10. **The Insured worked at Express from May to June 2009.**

Defendant admits that Plaintiff worked at Express following his termination, but contests the dates. The dates in this proposed fact conflict with those in Defendant's fact number 22, which Plaintiff did not dispute. Defendant's fact cited the disability benefits claim packet submitted by Plaintiff in support. I, therefore, find only the portion of Plaintiff's proposed fact typeset in bold to be uncontroverted.

11. **The Insured was involved in a second car accident in July 2009.**

Defendant does not dispute this fact.

12. **He received monthly care for his pain throughout 2009.**

Defendant admits that following Plaintiff's second automobile accident in July 2009, he saw a doctor each month. This fact is uncontroverted.

13. **The plan defines "Own Occupation" as:**

**. . . any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation[,] [w]e are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy.**

Defendant does not dispute this fact.

14. The medical records indicate the Insured was working six to seven hour days in March 2008.

In support of this fact, Plaintiff cites a March 4, 2008 progress note completed by physical therapist Joseph Blatt (Adm.Rec. 560) which states "Patient reports he has returned to work but is only working 6–7 hour shifts." Defendant disputes this proposed fact arguing that a report dated March 4th does not demonstrate how many days he had worked for the remainder of the month. I agree, and find this fact to remain controverted.

15. **Physical therapy notes from June 2008 note the Insured was performing modified duty and was allowed to lie down and rest as needed at work.**

Defendant states the discharge summary that Plaintiff cites in support of this fact reads, "Patient reports pain continues to significantly decrease. Patient reports he is working modified duty at this time. Patient states he is allowed to lie down and rest as needed at work...." This fact is uncontroverted.

16. **Graham stated in July 2011, "We do not have time sheets on Chris as he was a salaried employee."**

Defendant states that a July 29, 2011 e-mail from Graham to Defendant stated, "We do not have time sheets on Chris as he was a salaried employee.... Chris was layed off week ending January 23, 2009 due to economic reasons. Another employee was also layed-off that week." This fact is uncontroverted.

17. **According to the vocational report by Michael Dreiling, the Insured could not physically keep up with the sales requirements at CRH.**

Defendant admits that Walter's attorney referred Walter to a "vocational consultant," Michael J. Dreiling, as part of Walter's efforts to recover benefits and that Walter told Mr. Dreiling that in 2009, after leaving Graham, "he could not physically keep up with the sale requirements." This fact is uncontroverted.

18. **The description of the Insured's job includes beginning the day at 8:00 am in the office, driving to customer locations, returning to the office at 4:00 pm and leaving the office at 5:00 pm.**

Defendant states Plaintiff's description of his job is not precisely as Graham reported it. Graham reported, "He would begin his day in the office at 8:00 am and after phone calls etc he would leave to make customer calls. He would return to the office by 4:00 pm and would recap his day and then would leave the office at 5:00 pm." Defendant maintains that Plaintiff's proposed fact ignores that for some period after 8:00 am, Plaintiff would remain in the office and make "phone calls etc" and that he did not return "at" 4 pm but "by 4 pm." This fact is uncontroverted.

19. **The Insured received a wage of $1020/week plus $750 bonus at Christmas.**

Defendant admits that Plaintiff's salary for 2008 was $1,020/week plus a $750 bonus. Defendant adds that at the end of 2008, Plaintiff earned an increase in weekly salary to $1,040.

20. **A vocational assessment completed on December 21, 2009 indicated returning to work as a sales person was not a feasible goal for the Insured and that a less physically demanding job would likely**

result in average earnings of **$37,260 annually.**

Defendant admits that after Plaintiff was in a second accident in 2009, after his termination from Graham, Plaintiff was seen by a vocational consultant selected by his attorney who gave these opinions.

## V. ANALYSIS

Plaintiff Christopher Walter is a former employee of Graham Ship By Truck Company. While an employee of Graham, Plaintiff participated in an employee welfare benefit plan sponsored by Graham that provided disability benefits to eligible, qualifying participants. This plan was insured by a policy issued by Defendant Standard Insurance Company. Under the terms of the policy, a participant's insurance ended automatically on the date his employment terminated.

Plaintiff was injured in a motor vehicle accident on January 17, 2008. His employment with Graham terminated on January 23, 2009 due to economic reasons. Plaintiff suffered a second motor vehicle accident on July 24, 2009. In July of 2011, Plaintiff submitted a claim for plan benefits. Defendant denied Plaintiff's claim on December 5, 2011. Plaintiff appealed, and Defendant affirmed its denial.

Defendant now seeks summary judgment on its denial of benefits, arguing that substantial evidence supports its decision that Plaintiff was not disabled under the terms of the policy on his last day of employment. Plaintiff opposes Defendant's motion for summary judgment on grounds that, at the time of his termination, he (1) could not perform the duties of his Own Occupation and (2) had experienced a loss of at least 20% in his Index Predisability Earnings when working in his Own Occupation.

To determine whether Plaintiff was disabled at the time of his termination, the Court must look to the policy. According to the policy's terms, an individual is "disabled" from his Own Occupation:

If as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:

1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; *and*

2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

(emphasis added). Plaintiff cannot meet this two-prong definition.

■ First, substantial evidence supports Defendant's decision that Plaintiff was able to perform the material duties of his Own Occupation at the time his employment was terminated. The policy defines "Own Occupation" as:

...any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy.

The uncontroverted facts establish Plaintiff missed work the Friday and Monday after his accident, worked half days on Wednesday, Thursday and Friday, but returned full time the following Monday. Graham reported to Defendant that Plaintiff had not missed work thereafter and advised Plaintiff was "fully capable" when he was laid off. Although Plaintiff argues that he sought medical care on his days off, the uncontroverted facts do not indicate the nature or consistency of such care to be consistent with an inability to per-

form his Own Occupation (i.e., calling for a cold sore prescription, complaint of headache, taking fourteen vacation days in 2008—attending doctors' appointments on three of these dates, appointments only once a month).

█ Even if Plaintiff were found to satisfy the first prong of the definition, the record is completely devoid of evidence that Plaintiff suffered any loss in earnings. To the contrary, the uncontroverted facts show that Plaintiff's salary was higher when he was laid off on January 23, 2009, than it was at the time of the accident. Plaintiff does not maintain otherwise but, instead, argues that this is not representative of his earning ability since he was a salaried employee rather than being paid on an hourly basis. This argument is unpersuasive, as the language of the policy expressly requires a loss in earnings. *See McKay v. Reliance Standard Life Ins. Co.*, 428 Fed.Appx. 537, 542–43 (6th Cir.2011). Because Defendant did not abuse its discretion in denying Plaintiff benefits, Defendant's decision must be affirmed.

## IX. CONCLUSION

Consistent with the analysis set forth above, it is

ORDERED that Defendant's motion for summary judgment is granted.