Dennis HOBBS, Plaintiff,

v.

The HARTFORD LIFE AND
ACCIDENT INSURANCE
CO., Defendant.

Case No. 09–03433–CV–S–GAF.

United States District Court,
W.D. Missouri,
Southern Division.

Nov. 18, 2010.

Michelle D. Voss, Bruce K. Kirby, Schmidt, Kirby & Sullivan, P.C., Springfield, MO, for Plaintiff.

Richard J. Pautler, Thompson Coburn, St. Louis, MO, for Defendant.

### *ORDER*

GARY A. FENNER, District Judge.

Presently before the Court is Defendant The Hartford Life and Accident Insurance Co.'s ("Defendant") Motion for Judgment on the Administrative Record (Doc. # 14) requesting the Court enter judgment on the administrative record on Plaintiff Dennis Hobbs's ("Plaintiff") Complaint. *See* Doc. # 1. Additionally, before the Court is Plaintiff's Cross–Motion for Summary Judgment (Doc. # 25) requesting the Court: (1) find that the administrative determination denying Plaintiff continued Long–Term Disability ("LTD") benefits was arbitrary and capricious; (2) reverse the administrative determination denying Plaintiff's LTD benefits; (3) grant judgment to Plaintiff in the amount of accrued unpaid benefits since termination, plus interest; and (4) grant Plaintiff attorney fees and costs. For the reasons set forth below, Defendant's Motion is GRANTED, and Plaintiff's Motion is DENIED.

## DISCUSSION

### I. FACTS

Plaintiff was the Director of Sales and Marketing for Consolidated Nutrition, L.C. ("Consolidated"). (Doc. # 1, ¶ 7). Plaintiff possesses a Bachelors Degree in Accounting and has completed courses toward obtaining a Masters Degree. (Administrative Record ("A.R."), at p. 333). A Consolidated employee disability benefits plan provided LTD benefits to eligible, qualifying participants. (Doc. # 1, ¶ 11). Defendant insured the benefits under the LTD plan, and Plaintiff was a participant in the LTD plan. *Id.* at ¶¶ 7, 11.

On June 1, 1995, Plaintiff ceased working at Consolidated and claimed disability as a result of cardiovascular conditions. *Id.* at ¶¶ 7, 15. From June 2, 1995, through October 13, 2008, Defendant paid LTD benefits to Plaintiff. *Id.* at 7.

The pertinent LTD Plan language provided, among other things:

"Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee, because of Injury or Sickness is:

(1) *continuously* unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefits has been payable for the Insured Employee Occupation Period shown in Statement 4 of the Application, "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:

(1) *continuously* unable to engage in any occupation for which he is or become qualified by education, training, or experience; and

(2) under the regular care of a licensed physician other than himself.

(A.R. at p. 20) (emphasis added).[1]

Suspecting Plaintiff may no longer qualify for LTD benefits, Defendant had video surveillance conducted of Plaintiff on December 18 and 19 of 2007, by Triad Investigations Inc. *Id.* at 273–85. Surveillance commenced on December 18, 2007, at 5:57 a.m. and ceased at 4:05 p.m. the same day. During surveillance on that date, Plaintiff was away from his home for approximately four (4) hours. *Id.* at 275. Plaintiff was observed driving a vehicle, walking around stores, and blowing leaves with a hand-held leaf blower for approximately three (3) minutes. *Id.* at 275, 281. On December 19, 2007, surveillance continued from 5:49 a.m. until 4:02 p.m. *Id.* at 275. On this date, Plaintiff was observed driving his vehicle, walking, bending at the waist, and carrying unidentified items. *Id.*

On August 14, 2008, Plaintiff underwent a Stress Test. *See id.* at 212–22. Plaintiff was able to perform for eleven (11) minutes and fifty-eight (58) seconds, and achieved 7.0 METS. *Id.* at 214. The "Stress ECG Impression" indicated a "[n]ormal hemodynamic exercise test with normal response to exercise, and a normal electrocardiographic exercise test, although [Plaintiff] reported slight increase in chest pressure there was no significant change in the ST waves." *Id.* at 213.[2]

---

1. The Insured Employee Occupation Period shown in Statement 4 of the Application is twenty-four (24) months. *Id.* at p. 13.

2. Specifically, the Stress Test indicated that: (1) the test was terminated due to fatigue, and Plaintiff's efforts were considered to be excellent; (2) Plaintiff's heart rate response was adequate for the level of work performed, and

In September of 2008, Dr. Mark Friedman, board certified in internal medicine with a specialty in cardiovascular disease, peer reviewed Plaintiff's medical records. *See id.* at 356–59. On September 28, 2008, Dr. Friedman spoke with Dr. James Ceaser, a board certified cardiologist and Plaintiff's treating physician. *Id.* at 356–57. During their conversation, Dr. Ceaser told Dr. Friedman that he believed Plaintiff suffered from angina pectoris related to his ischemic heart disease, and that he is never symptom free and the symptoms increase in frequency and severity in stressful work environments. *Id.* At the time, Dr. Ceaser had not reviewed the surveillance video, but had reviewed the surveillance summary and indicated that Plaintiff "was able to do some degree of physical activity as long as he can take his time with the activity and that he can rest when necessary." *Id.* Upon review of Plaintiff's medical records, the surveillance information, and the conversation with Dr. Ceaser, Dr. Friedman opined Plaintiff was capable of a "sedentary level of function," and he "may be capable of a light level of function for short periods of time." *Id.* at 357–58. In light of the surveillance information, Dr. Friedman opined Plaintiff could "lift ten (10) pounds frequently and twenty (20) pounds occasionally, can walk for more than fifty (50) feet, can stand for at least two point five (2.5) hours, and can sit without restrictions," and that Plaintiff's "level of activity exceeds the limits placed by Dr. Ceas[e]r." [3] *Id.* at 359.

Additionally, on October 10, 2008, Lisa Hufford, a rehabilitation case manager, conducted an employability analysis based on Plaintiff's work and education history, and Dr. Friedman's peer review. *See id.* at 333–55. Ms. Hufford concluded that there were "one hundred-nineteen (119) occupations at the Closest through Potential levels of transferability" available for Plaintiff, and at least four (4) sedentary occupations, which were prevalent and gainful, paying an estimated median monthly income of more than five thousand (5,000) dollars. *Id.* at 335.

Defendant's letter dated October 13, 2008, advised Plaintiff that it had determined he was not qualified for LTD benefits as of that date, and provided an explanation of its determination based on Plaintiff's medial records, the surveillance information, Dr. Friedman's peer review, and Ms. Hufford's employability analysis. *Id.* at 167–72; (Doc. # 1, at ¶ 8). Plaintiff filed an appeal. (Doc. # 1, at ¶ 9, Exhibit 2). Along with his appeal, Plaintiff submitted a letter dated December 12, 2008, from Dr. Ceaser, in which Dr. Ceaser opined that Plaintiff, "can do little more than walk a short distance on level ground without developing chest pain ... I think at present in his present state he is totally disabled." (A.R., at p. 261).[4] Additionally, Plaintiff submitted a letter dated February 23, 2009, from Michael Lala, a certified rehabilitation counselor. *Id.* at 265–68. In the letter, Mr. Lala concluded that Plaintiff was unable to perform sedentary work on a full-time basis and "[h]e is not employable at this time."[5]

post recovery heart rate was normal; (3) his blood pressure response was normal for the level of work performed; (4) his resting ECG indicated sinus bradycardia; (5) there was no significant ST or T-wave changes noted with stress; and (6) no arrhythmias were detected during stress or recovery, however, Plaintiff did have some bigeminal premature ventricular contractions during recovery. *See id.* at 212–13.

3. Dr. Ceaser opined Plaintiff is "able to lift ten (10) pounds occasionally, walk less than fifty (50) feet, sit less than four (4) hours, and stand only for short period of time." *Id.* at 359.

4. On the date of the letter, Dr. Ceaser's opinion indicated Plaintiff's restrictions were more limited than at the time he spoke with Dr. Friedman. *See id.* at 261–64.

5. Mr. Lala's opinion seems to be based on

*Id.* at 268.

In June of 2009, Dr. Sanjeev Patel, board certified in cardiovascular diseases and internal medicine, reviewed Plaintiff's appeal, including Plaintiff's medical records, the surveillance information, and Dr. Ceaser's opinions and notes. *Id.* at 188–95. Dr. Patel spoke to Dr. Ceaser regarding Plaintiff. *Id.* at 192–93. Dr. Ceaser agreed that the surveillance video depicted Plaintiff "performing sedentary level activity without discomfort," however, Dr. Ceaser continued to believe Plaintiff was unable to perform a full-time occupation due to his coronary artery disease. *Id.* Dr. Patel submitted a report of his findings and conclusions, where he opined:

> [Plaintiff's] ejection fractions have remained relatively normal with an ejection fraction of at least 60%. There has been no documentation of any significant valvular disease. His stress test dated 08/14/2008 documented a fair exercise tolerance, where he was able to exercise for 12 minute[s] using a modified Bruce protocol, achieving at least 7 Mets. He did have complaints of chest pain at peak exercise, however, there were no EKG change suggestive of ischemia seen. And in addition, review of the surveillance video depicted that he is able to at least perform sedentary level activities without any apparent discomfort or chest pain.
>
> Taking all of the above into consideration, from a cardiology perspective, there was no objective physical examination or diagnostic study findings to support inability to perform full time sedentary level as defined by the [Department of Labor] with the above noted minimal modifications and provided that the claimant would have the ability to take

breaks frequently should repetitive moderate exertional activity be required. *Id.* at 194.

After reviewing Plaintiff's administrative appeal, Defendant, in a letter dated June 12, 2009, advised Plaintiff that it had reconsidered its October 13, 2008, termination of Plaintiff's LTD benefits and determined termination was proper. *See id.* at 157–60; (Doc. # 1, ¶ 11, Exhibit 5).

Having exhausted administrative remedies, Plaintiff appealed the administrative judgement to this Court alleging Defendant's determination was arbitrary and capricious. (Doc. # 1, ¶¶ 15, 19).

## II.  LEGAL STANDARD

Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990). A moving party is "entitled to judgment as a matter of law" if the nonmoving party fails to sufficiently demonstrate an essential element of a claim with respect to which it has the burden of proof. *Id.* (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Id.; see Anderson v. Liberty*

---

Plaintiff's educational and work history, Dr. Ceaser's opinion, a review of Ms. Hufford's report, and a general employment analysis.

*There is no indication Dr. Friedman's report or the surveillance information was reviewed. See id.* at 6265–68.

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Additionally, when considering a denial of benefits pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, ("ERISA"), the Court reviews the denial under an abuse of discretion standard when the benefit plan gives the plan administrator discretionary authority to determine benefits eligibility or construe the plan terms. *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006) (citing *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004)); *accord Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The plan administrator's decision is reversed only if it is arbitrary and capricious. *Groves*, 438 F.3d at 874 (citing *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir.2004)); *cf. Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 946 n. 4 (8th Cir.2000) (finding that the "arbitrary and capricious" and "abuse of discretion" standards are generally interchangeable terms).

## III. ANALYSIS

In applying the abuse of discretion standard to this case, the Court "must affirm if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Groves*, 438 F.3d at 875 (citing *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir.2002)); *see Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir.2009). A reasonable decision that is fact based and supported by substantial evidence should not be reversed. *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir.2007); *Groves*, 438 F.3d at 875; *see Schatz*, 220 F.3d at 949 (finding that substantial evidence means "more than a scintilla but less than a preponderance"); *see also Norris v. Citibank, N.A. Disability Plan (501)*,

308 F.3d 880, 883–84 (8th Cir.2002) (determining the Court may consider quantitative and qualitative evidence, and should be hesitant to interfere with the administration of an ERISA plan). The Court's review is limited "to evidence that was before the [administrator]." *Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 641 (8th Cir.1997) (quoting and citing *Collins v. Cent. States S.E. & S.W. Areas Health & Welfare Fund*, 18 F.3d 556, 560 (8th Cir.1994)); *cf. Brown v. Seitz Foods, Inc., Disability Ben. Plan*, 140 F.3d 1198, 1200 (8th Cir.1998) (determining upon plaintiff showing good cause, the district court may admit additional evidence).

■ The crux of Plaintiff's argument is that Defendant improperly disregarded the conclusions of Plaintiff's treating physician, Dr. Ceaser. However, treating physicians are not automatically entitled to special weight under ERISA disability determinations. *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (determining that plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, but are not required to give special weight to treating physician opinions, and courts may not impose a burden of explanation on the administrators when they credit reliable conflicting evidence); *see Midgett*, 561 F.3d at 897; *Weidner v. Fed. Express Corp.*, 492 F.3d 925, 930 (8th Cir.2007). The Eighth Circuit has rejected the contention that an administrator abused its discretion by crediting a peer review physician's analysis over a treating physician's analysis because the former did not physically examine the claimant. *See Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 899 (8th Cir.2006). Further, the Eighth Circuit has held that "a plan administrator has discretion to deny benefits based upon its acceptance of the opinions

of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial." *Midgett*, 561 F.3d at 897 (quoting and citing *Dillard's*, 456 F.3d at 899–900); *see Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir.2006).

■ Given the facts contained within the record, the Court finds that a reasonable person could have reached a decision similar to the decision made by Defendant. There is substantial evidence to support Defendant's decision to terminate Plaintiff's LTD benefits. The record indicates Defendant extensively reviewed the evidence. Defendant reviewed Plaintiff's medical records, the August 14, 2008, Stress Test, and the surveillance information. Defendant sought medical opinions from Drs. Friedman and Patel, who both reviewed the aforementioned evidence and conversed with Plaintiff's treating physician, Dr. Ceaser. Both physicians opined Plaintiff was capable of full-time sedentary work. Defendant also sought the opinion of a rehabilitation specialist, Ms. Hufford, who believed there were full-time sedentary positions available for which Plaintiff was qualified. Further, Defendant reviewed the conflicting evidence received from Dr. Ceaser and Mr. Lala.[6]

### CONCLUSION

There is substantial evidence supporting Defendant's termination of Plaintiff's LTD benefits, and the Court finds Defendant's decision was not arbitrary and capricious, and a reasonable person could have reached a similar decision. Accordingly, Defendant's Motion for Judgment on the Administrative Record (Doc. # 14) is GRANTED, and Plaintiff's Cross–Motion for Summary Judgment (Doc. # 25) is DENIED.

**IT IS SO ORDERED.**

---

**6.** Plaintiff relies on *Green v. Union Security Insurance Company*, 700 F.Supp.2d 1116 (W.D.Mo.2010), a recent decision by the Court under the Honorable Greg J. Kays, Judge for the United States District Court for the Western District of Missouri. However, *Green* is factually distinguishable from the present case. In *Green*, the policy language differed, and the evidence weighted much more heavily in favor of finding of an abuse of discretion.