# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2543

_____

Rodney Waldoch

*Plaintiff - Appellant*

v.

Medtronic, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 11, 2014
Filed: July 9, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Rodney Waldoch sued his former employer Medtronic, Inc., alleging that Medtronic improperly denied his claim for benefits under a long-term disability plan (the Plan) governed by the Employment Retirement Income Security Act of 1974

(ERISA). The district court[1] granted Medtronic's motion for summary judgment. We affirm.

## I.

### A.

Because this case arises from the grant of summary judgment, we recite the facts in the light most favorable to Waldoch. See Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan, 574 F.3d 644, 647 (8th Cir. 2009). Waldoch was a Senior Buyer-Planner for Medtronic from 2001 until his termination in 2008. Waldoch has Type I Diabetes Mellitus. In 2004, Waldoch's endocrinologist wrote a letter to Medtronic advising that Waldoch's diabetes control had become aggravated due to substantial stress at work. The doctor recommended that Waldoch's workweek be reduced to 32 hours. At work, Waldoch struggled to balance his health needs with his position's demands. He battled fatigue and mood swings and struggled with retinopathy, neuropathy, calf-tightening, hypertension, hyperlipidemia, and carpal-tunnel syndrome. In 2005, Waldoch was diagnosed with "hypoglycemia unawareness." From 2006 to 2007, Waldoch's work performance declined significantly, and he began for the first time to receive low marks on his performance evaluations. In 2007, another endocrinologist Dr. Montori, noted that Waldoch had less glucose variability and had been achieving "good results." Nevertheless, Dr. Montori noted that recent layoffs at Medtronic had affected Waldoch's stress levels and "his ability to cope with his disease."

Waldoch's work-related stress continued into 2008. Dr. Montori continued to opine that Waldoch's job obligations contributed to his overall stress. Waldoch's performance evaluations reflected his frustration and inability to interact with his co-

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

workers. Despite Waldoch's efforts to manage his health and improve his work performance, on November 24, 2008, he was terminated by Medtronic.

B.

Medtronic provided its employees a self-funded, self-administered long-term disability plan. The Plan was "designed to provide benefits for qualifying disabilities lasting longer than 26 weeks." Benefits began when the employee "ha[s] been Totally Disabled for 26 weeks in a rolling 12-month period" and "ha[s] provided documentation satisfactory to Medtronic or its delegated claims administrator providing that [the employee is] Totally Disabled." The Plan defined "Total Disability and Totally Disabled" as follows:

> During the 26-week elimination period and during the first year that you are receiving Long Term Disability Benefits, you are considered to be Totally Disabled if you are under the care of a Physician and prevented from performing each of the essential functions of your regular occupation because of an illness or accidental injury and you are not working at all. The one year period begins on the first day as of which you have been approved to receive Long Term Disability Benefits.

> To be considered Totally Disabled after this period of time, the illness or accidental injury must prevent you from working at *any* occupation for which you are, or could reasonably become, qualified by education, training or experience, and you are not working at all.

As the definitions of Total Disability and Totally Disabled indicate, the Plan broke up disability benefits into two categories: (1) "regular occupation" or as the parties refer to it "own occupation" LTD benefits and (2) "any occupation" LTD benefits.

In order to obtain LTD benefits under the Plan, a Medtronic employee was required to first submit an application to the Claims Administrator. The Claims Administrator would render a decision and notify the employee of the outcome. The

-3-

Plan provided that the Claims Administrator "may secure independent medical or other advice and require such other evidence as it deems necessary to decide [a] claim." If a disability claim was denied, the employee retained the right to appeal the Claims Administrator's decision. Throughout the process, the employee retained the responsibility to "provide medical evidence, satisfactory to Medtronic or its delegated claims administrator" of the employee's Total Disability.

As to the issue of discretionary authority, the Plan stated:

> The Plan Administrator has complete and total discretionary authority to interpret and administer the Plan. The Senior Vice President of Human Resources, Vice President of Compensation and Benefits or Director of U.S. Benefits, have the authority and responsibility to interpret the Plan, make rules, determine eligibility for benefits, determine coverage and benefit amounts, and resolve all claims and disputes regarding the Plan. The decisions of the Senior Vice President of Human Resources, Vice President of Compensation and Benefits or Director of U.S. Benefits are final and binding on all persons. The Senior Vice President of Human Resources, Vice President of Compensation and Benefits or Director of U.S. Benefits may further delegate any and all authority under the Plan as they deem appropriate.

Medtronic entered into a Long Term Disability Benefit Administration Agreement (the Services Agreement) with Hartford-Comprehensive Employee Benefit Service Company (Hartford). In the Services Agreement, Hartford agreed to evaluate and calculate LTD benefits under the Plan. Moreover, the Services Agreement included an "Appeal Assistance" section under which Hartford agreed to assist Medtronic, "in a nonfiduciary capacity, with denied claims on appeal." The section specifically provided that Hartford did "not make final claim determinations on appeal." Instead, Hartford would merely provide Medtronic a recommendation. The Services Agreement emphasized that Hartford only acted as a provider of services to Medtronic's Plan. Hartford did not "insure [Medtronic's] Plan in any

way," was "not a fiduciary," and disclaimed any responsibilities to perform any of the functions required by ERISA.

To summarize Medtronic's review procedures, Hartford collected and processed LTD benefit applications and made the initial, benefit-eligibility determination. If the plan participant was unhappy with Hartford's decision, then the participant retained the right to appeal the decision to Medtronic. On appeal, Hartford considered the participant's argument, conducted further investigation if required, and recommended action for Medtronic to ultimately take.[2] Medtronic exercised final authority to determine the outcome of any contested benefit claims.

C.

Waldoch filed his claim for LTD benefits with Medtronic on July 27, 2009. Waldoch attached to his application for LTD benefits Dr. Montori's assessment of his condition. Dr. Montori opined that Waldoch had no physical restrictions, but that he could not engage in predictable ongoing activity, of any type, without disruption by variation in his blood sugar. In a supplemental report, Dr. Montori stated that Waldoch needed to "self-monitor frequently and be vigilant with his sugar levels." Though the cause of the variations was "somewhat unclear," Dr. Montori noted that blood sugar variability can lead to unexpected hypoglycemia, which in turn can alter concentration, mood, cognition, and judgment.

Hartford denied Waldoch's claim for LTD benefits in August 2009, reasoning that Waldoch failed to produce evidence that he was disabled prior to his termination date. In February 2010, Waldoch appealed the decision to Medtronic. Waldoch submitted additional doctors' notes with his appeal, and Hartford retained Drs.

---

[2]In a letter sent to Waldoch in June 2011, Hartford incorrectly indicated that it was acting as insurer and fiduciary on Waldoch's claim. This mistake was corrected shortly after in a July 2011 follow-up letter.

Goldman and Fordan to review the file. Dr. Fordan, who was board certified in Internal Medicine, Endocrinology, Diabetes, and Metabolism, concluded that Waldoch's only evidence of impairment stemmed from his own self-reporting. Moreover, according to Dr. Fordan, Waldoch attributed the changes in his personality to his fluctuating blood sugar, but, Waldoch failed to rebut the converse, that "his blood sugars fluctuate due to his behavior." Nevertheless, in June 2010, Medtronic overruled Hartford's recommendation to completely deny benefits and determined that Waldoch was entitled "own occupation" LTD benefits. Because of the stress inherent in Waldoch's position at Medtronic, Medtronic determined that "own-occupation" benefits were justified. Medtronic determined that further investigation was required before a decision on "any occupation" LTD benefits could be made.

Hartford began its additional review by requesting an employability analysis report (EAR) to determine other potentially compatible positions for which Waldoch was qualified. The EAR identified 5 occupations within the "closest" level, 38 occupations within the "good" level, 107 occupations within the "fair" level, and 95 occupations within the "potential" level. Hartford also retained Dr. Meikle, an endocrinologist, to review Waldoch's medical records from 2004 to 2010. According to Dr. Meikle, Waldoch was at minimal risk for hypoglycemia and his hypoglycemia awareness was good. In the meantime, in September 2010, Waldoch informed Hartford that the Social Security Administration (SSA) had approved his disability claim. The SSA afforded the opinions of Waldoch's treating physicians controlling weight to reach its decision that Waldoch did not have the ability to sustain work activity for eight hours a day, five days a week. Nevertheless, in October 2010, based on the EAR and Dr. Meikle's review, as well as the earlier reviews performed by Drs. Fordan and Goldman, Hartford denied Waldoch's "any occupation" LTD claim. Hartford acknowledged Waldoch's diabetes but reasoned that work stressors appeared to be driving Waldoch's overall decline in health.

Once again Waldoch appealed Hartford's denial to Medtronic, this time, appealing Hartford's denial of "any occupation" LTD benefits. Along with his appeal, Waldoch submitted assessments from Drs. Montori, Kudva, and Seaquist. Waldoch's doctors disagreed with Hartford's doctors. Waldoch's doctors reasoned that Waldoch was unable to predict the occasion and severity of his hypoglycemic episodes. Dr. Seaquist contended that Waldoch's hypoglycemia could produce symptoms of fatigue and make it difficult for him to concentrate. Hartford responded to Waldoch's appeal by retaining an additional reviewing doctor, Dr. Cooper. Dr. Cooper believed that Waldoch could function in a low stress, "sympathetic" workplace. He concluded that Waldoch could operate in an environment with access to carbohydrates for snacking and freedom to take frequent breaks.

On August 16, 2011, Hartford recommended in an email to Medtronic that Medtronic should uphold the denial of Waldoch's "any occupation" LTD claim. Attached to the email was a four-page executive summary highlighting Waldoch's arguments and Hartford's responses to each argument. App. 1179-82. The next day, Hartford shipped Waldoch's medical records to Medtronic. On August 18, Medtronic responded to Hartford's recommendation: "We agree with the recommendation to uphold the denial." App. 1175. Waldoch was informed by Hartford that his claim has been denied, and Waldoch requested that Hartford reconsider its decision, contending that Dr. Cooper failed to address a second assessment performed by Dr. Seaquist. At Medtronic's request, Hartford instructed Dr. Cooper to address the assessment. Dr. Cooper complied with the request but did not change his position. Hartford relayed the information to Medtronic. On November 28, 2011, Waldoch was informed that Medtronic had upheld its decision to deny Waldoch's claim for "any occupation" LTD benefits. With the administrative process exhausted, Waldoch filed this suit July 6, 2012.

-7-

II.

We review de novo the district court's grant of summary judgment. Eisenrich, 574 F.3d at 647. The ultimate question in this appeal is whether Medtronic violated ERISA by improperly denying Waldoch's claim for "any occupation" LTD benefits. In order to answer this question, we must first determine the proper standard of review. The district court reviewed Medtronic's denial of benefits for abuse of discretion. "We review de novo whether the district court applied the correct standard of review" to assess the plan administrator's decision. Siegel v. Conn. Gen. Life Ins. Co., 702 F.3d 1044, 1048 (8th Cir. 2013). We agree with the district court that the abuse-of-discretion standard applies, and we hold that Medtronic did not abuse its discretion.

A.

A plan administrator's denial of ERISA benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan grants such discretionary authority, then the plan administrator's decision is reviewed for abuse of discretion. King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc). Here, the Plan states that "[t]he Plan Administrator has complete and total discretionary authority to interpret and administer the Plan." This language is sufficient to trigger the abuse-of-discretion standard. See McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 792 (8th Cir. 2003).

Waldoch does not contest this point. Instead, he asserts that procedural irregularities in Medtronic's review render the abuse-of-discretion standard inappropriate. In response to similar allegations made before the district court, Medtronic supplemented the record with evidence demonstrating its claims-handling process. Waldoch filed a motion to strike the additional evidence, which was overruled by the district court. Before considering whether the alleged procedural

irregularities exist, we consider whether the district court erred in overruling Waldoch's motion to strike.

1.

We review the district court's ruling on Waldoch's motion to strike for abuse of discretion. See Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 945 (8th Cir. 2010); accord Eugene S. v. Horizon Blue Cross Blue Shield of N.J., 663 F.3d 1124, 1129 (10th Cir. 2011). Generally "a reviewing court 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'" See King, 414 F.3d at 999 (quoting Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999)). Because our review in cases in which an ERISA plan grants the plan administrator discretionary authority focuses on whether the administrator's decision was "supported by . . . substantial evidence in the materials considered by the administrator," see id., limiting the record on appeal to the record before the plan administrator is logical, see Murphy v. Deloitte & Touche Grp. Ins. Plan, 619 F.3d 1151, 1159 (10th Cir. 2010) ("Because the administrator must base its decision on the materials included in the administrative record, a district court would have no justification for concluding that an administrator abused its discretion by failing to consider materials never submitted to it for inclusion in the administrative record."). This general rule, however, is relaxed when evidence is admitted for the limited purpose of determining the proper standard of review. See Farley v. Ark. Blue Cross & Blue Shield, 147 F.3d 774, 776 & n.4 (8th Cir. 1998).

Here, the district court admitted the affidavit of Medtronic's principal benefits analyst Laura Erchul along with the exhibits attached. This evidence helped illuminate the interaction between Hartford and Medtronic throughout the handling of Waldoch's claim. Medtronic did not offer the evidence to demonstrate a new rationale for denying Waldoch's claim. Cf. King, 414 F.3d at 999. Instead, Medtronic was merely responding to Waldoch's allegations of procedural irregularity,

-9-

which were urged for the first time before the district court, and the court admitted the evidence in order to fully understand Medtronic's internal processes. While remaining cognizant of the need to limit drawn out discovery to promote ERISA's goal of "inexpensively and expeditiously" resolving disputes, see Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir. 1990), we hold that the district court did not abuse its discretion by admitting Medtronic's supplemental evidence for the limited purpose of determining the proper standard of review.

2.

With the aid of Erchul's affidavit and the exhibits attached to it, we consider Waldoch's argument that procedural irregularities rendered the abuse-of-discretion standard inappropriate. Minor procedural defects in the review process do not carry significant weight in our review of a plan administrator's decision to deny benefits. See Trs. of Electricians' Salary Deferral Plan v. Wright, 688 F.3d 922, 927 (8th Cir. 2012). To alter the standard of review or affect our review under the abuse-of-discretion standard,[3] a procedural irregularity must rise to the level of a "'serious breach of the plan trustee's fiduciary duty to the plan beneficiary.'" Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 869 (8th Cir. 2008) (quoting Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir.

---

[3]In Woo v. Deluxe Corp., our circuit held that a less deferential standard of review applies when "(1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." 144 F.3d 1157, 1160 (8th Cir. 1998). The Supreme Court in Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105, 115-17 (2008), in part abrogating Woo, held that a conflict of interest should be analyzed as a factor under the abuse-of-discretion standard instead of changing the standard from abuse of discretion to a less deferential standard. Our circuit has not definitively resolved the impact of Glenn on the "*procedural irregularity* component of the Woo sliding scale approach." See Wrenn v. Principal Life Ins. Co., 636 F.3d 921, 924 n.6 (2011). We need not resolve this issue here because Waldoch has failed to establish that any procedural irregularities exist in this case.

1996)).  The procedural error must leave "the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Buttram, 76 F.3d at 900; see also Wright, 688 F.3d at 927.

Waldoch's procedural irregularity argument is twofold.  Waldoch begins by relying on McKeehan v. Cigna Life Insurance Co., 344 F.3d 789 (8th Cir. 2003).  In McKeehan, the plan granted discretionary, decision-making authority to the plan sponsor, but the claim administrator purported to act as final decision-maker on the claim at issue. See id. at 792-93.  Because the record did not establish that the claim administrator was granted discretionary, decision-making authority, the court held the claim administrator's decision to deny benefits should have been reviewed de novo. Id. Waldoch contends that Hartford, not Medtronic, acted as the final decision-maker on his claim.  Because Hartford was not granted any authority to make final benefit determinations, its denial decision should not be reviewed for abuse of discretion. Waldoch then turns his attention to Medtronic's review.  According to Waldoch, none of the three individuals listed in the Plan—the Senior VP of HR, VP of Compensation and Benefits, or Director of U.S. Benefits—reviewed his claim.  More broadly, Waldoch asserts that Medtronic failed to conduct a meaningful review of his claim, merely "rubber-stamping" Hartford's decision and thus failing to comply with the "full and fair review" required by 29 U.S.C. § 1133(2).  To sum up Waldoch's position, first, Hartford reviewed and denied his claim, but the Plan did not vest Hartford with such authority. Second, although the Plan granted Medtronic complete discretionary authority to make final benefit determinations, Medtronic never exercised that authority.  He argues that because the only entity that exercised authority lacked it, de novo review is proper.  We disagree with Waldoch.

First, Medtronic's argument for the abuse-of-discretion standard does not depend on Hartford's authority.  Unlike McKeehan, Hartford did not assert it was acting as the final decision-maker.  The proper focus of this case is not on Hartford's

status, but rather whether Medtronic complied with the Plan's review procedures and whether those procedures are sufficient under ERISA.

Second, the record indicates that Medtronic sufficiently reviewed Waldoch's claim and rendered the final decision to deny benefits. Assuming that Medtronic's Plan required one of the three listed individuals to be directly involved in each claim, Medtronic satisfied this requirement. Medtronic produced evidence showing that throughout Waldoch's claims process Medtronic's claims analyst Lauren Erchul reported directly to Roger Chizek, Medtronic's Director of U.S. Benefits. In Erchul's affidavit, she declared that "Mr. Chizek made the final decision to grant Mr. Waldoch's 'own occupation' LTD claim in June 2010 and to deny Mr. Waldoch's 'any occupation' LTD claim in August 2011 and November 2011." App. 1452. Attached to the affidavit were emails between Erchul and Hartford's benefits analysts. Specifically, as to the "any occupation" LTD claim, Medtronic produced an email dated August 16, 2011, from Hartford to Erchul, stating that Hartford still recommended upholding the denial and an email dated August 18, 2011, from Erchul back to Hartford, stating that Medtronic agreed with the decision. App. 1175, 1480. This email chain, in conjunction with Erchul's affidavit, allays any concern that the proper individuals at Medtronic were isolated from the final decision on Waldoch's claim.

More broadly, Medtronic satisfied its obligation to conduct a meaningful review and render a final decision. Medtronic was permitted to delegate claims processing functions to Hartford and rely on Hartford's reasoning without compromising its obligation to provide a "full and fair review." The McKeehan court recognized that a plan administrator may hire a third party "to perform ministerial claims processing functions." See McKeehan, 344 F.3d at 792; see also 29 C.F.R. § 2509.75-8, at D-2; Geddes v. United Staffing Alliance Emp. Med. Plan, 469 F.3d 919, 925 (10th Cir. 2006) (reasoning that a plan administrator's inherent discretion to delegate "is confirmed and extended when the authority to delegate is explicitly

mentioned in the [plan]"). Consistent with the claims processing function recognized in McKeehan, Hartford processed benefit applications and rendered an initial decision on claims. If the plan participant appealed a claim denial, Hartford recommended a decision to Medtronic. But, the final decision was Medtronic's to make.

Medtronic's August 18, 2011 email to Hartford encapsulates this relationship. That email reflects Medtronic's recognition both that Hartford had recommended action and that Medtronic was obligated to render the final decision, which it did. Cf. Shelby Cnty. Health Care Corp. v. Majestic Star Casino, 581 F.3d 355, 365-67 & n.3 (6th Cir. 2009) (reasoning that abuse-of-discretion review was improper because plan administrator played no role in the final decision to deny benefits). In addition, Medtronic had on occasion exercised its authority over Hartford by directing Hartford to change its recommended course of action. On Waldoch's earlier appeal of "own occupation" LTD benefits, Medtronic rejected Hartford's recommendation to uphold its denial. Likewise, in response to Waldoch's request for reconsideration of the final "any occupation" decision, Medtronic instructed Hartford to have Dr. Cooper supplement his report to fully address Dr. Seaquist's opinions. As final decision-maker, Medtronic was permitted to rely on Hartford's analysis to reach its decision without having to duplicate Hartford's work. See McKeehan, 344 F.3d at 792. A plan administrator hires a claims administrator to streamline benefits review and add expertise to a process that can impose burdensome requirements.[4] Requiring a plan administrator to duplicate the claim administrator's efforts would negate many of the benefits of hiring a third-party expert. Before rendering its final decision, Medtronic received a four-page, executive summary from Hartford along with Waldoch's medical history. We have no reason to believe that Medtronic did not consider this information prior to rendering its decision.

---

[4]In the Services Agreement, Hartford estimated that the Plan covered 25,000 eligible employees and that it would manage 170 claims.

To conclude, the Plan provided Medtronic with "complete and total discretionary authority to interpret and administer" its provisions. This language is sufficient to trigger a deferential abuse-of-discretion standard of review, and Waldoch has failed to establish a procedural irregularity that would alter this standard or weigh in our consideration under it. We now consider whether Medtronic abused its discretion.

B.

Our review for abuse of discretion examines whether the plan administrator's decision "'was supported by substantial evidence, meaning more than a scintilla but less than a preponderance.'" Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) (quoting Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000)). A decision "supported by a reasonable explanation . . . should not be disturbed, even though a different reasonable interpretation could have been made." Id. (internal quotation marks omitted). Though we afford a plan administrator's decision great deference, an administrator cannot simply ignore relevant evidence or "'arbitrarily refuse to credit a claimant's reliable evidence.'" See Wilcox v. Liberty Life Assurance Co., 552 F.3d 693, 701 (8th Cir. 2009) (quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)).

Waldoch's primary complaint is that Medtronic ignored material evidence in denying his claim. According to Waldoch, Medtronic failed to consider the impact his blood sugar variability and hypoglycemia unawareness had on his cognitive and behavioral functions. He argues that Medtronic focused its questions to its reviewing physicians and its own inquiry on only the physical limitations his diabetes imposed. Waldoch asserts that his frequent blood sugar variability caused his irritability, anxiousness, inability to focus, and fatigue, and these conditions rendered him unable to work.

-14-

The administrative record does not support Waldoch's portrayal of Medtronic's review. Hartford acknowledged that Waldoch's medical records indicated a fluctuation in blood sugar and instances of hypoglycemia unawareness. See, e.g., App. 1214. This evidence justified Waldoch's "own occupation" LTD claim. But, Medtronic's position throughout the appeal was that Waldoch failed to show that his blood sugar variability caused his cognitive and behavioral limitations, which in turn rendered him completely unable to work. Medtronic requested Drs. Fordan, Mielke, and Cooper to consider whether Waldoch's reports of unpredictable episodes of low blood sugar would render him unable to work. Dr. Fordan found Waldoch's claims to be unsupported and opined that "stressors from work are affecting his diabetes control, not the other way around." App. 1320. Dr. Cooper similarly found Waldoch's subjective reports to be supported by clinical evidence and noted that reasonable accommodations could be made at work to account for daily episodes of hypoglycemia. App. 1338, 1340-41. Even Dr. Kudva, one of Waldoch's physicians, indicated that Waldoch could function with significant accommodations in a "sympathetic workplace." App. 1336. In the end, Medtronic was not persuaded that Waldoch established his reported non-physical symptoms entitled him to "any occupation" LTD benefits. After considering all of the evidence, Medtronic was entitled to make this decision, see McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 925 (8th Cir. 2004) ("It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence."), even though a different decision could have been made, see Midgett, 561 F.3d at 897.

Waldoch's remaining arguments also lack merit. Waldoch contends that Medtronic should have given more weight to the ALJ's findings in the SSA proceeding. Hartford recognized Waldoch's SSA award as relevant evidence, but Medtronic and Hartford concluded that the SSA decision was not controlling. Because SSA disability awards are not binding on ERISA plan administrators, we find no error in Medtronic's actions. See Coker v. Metro. Life Ins. Co., 281 F.3d 793, 798 (8th Cir. 2002). Waldoch also argues Hartford's EAR was flawed. He contends

that the positions listed were too similar to his position at Medtronic and thus would create similar stress-induced problems. We see no flaw in Medtronic relying on the EAR to conclude that Waldoch could obtain a position similar to his at Medtronic in a lower-stress, sedentary environment. In fact, the results from the EAR constituted additional evidence supporting its denial of benefits. See Green v. Union Sec. Ins., 646 F.3d 1042, 1052 (8th Cir. 2011).

Our role in reviewing for abuse of discretion is not to "weigh the evidence anew" and render a decision. Id. at 1053. We only ask whether a reasonable person could reach the decision Medtronic reached and whether the decision was supported by substantial evidence in the record. See Midgett, 561 F.3d at 897. Under this standard, we agree with the district court that Medtronic did not abuse its discretion in denying Waldoch's claim for "any occupation" LTD benefits.

III.

The judgment of the district court is affirmed.

_____